CP:TF
F.#2011R00344

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

M11-559

- - - - - - - - - - - - - - - -X

UNITED STATES OF AMERICA

- against -

SEMYON VAYNER otherwise known as
    "Sam Vayner" and "Semen,"

- and -

ALIAKSANDR ZHYLTSOU,

                Defendants.

- - - - - - - - - - - - - - - -X

**FILED UNDER SEAL**

AFFIDAVIT IN SUPPORT OF
AN ARREST WARRANT

(18 U.S.C. §§ 2 and 915)

EASTERN DISTRICT OF NEW YORK, SS:

KOMAAL C. COLLIE, being duly sworn, deposes and says that he is a Special Agent of the Diplomatic Security Service ("DSS"), United States Department of State ("DOS"), duly appointed according to law and acting as such.

From in or about December 2010 to May 27, 2011, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants SEMYON VAYNER, otherwise known as "Sam Vayner" and "Semen," and ALIAKSANDR ZHYLTSOU, together with VLADYSLAV TIMKU and others, falsely assumed and pretended to be a diplomat or other official of a foreign government, and acted as such, and in such pretended character attempted to obtain a thing of value, in violation of Title 18, United States Code, Section 915.

(Title 18, United States Code, Sections 2 and 915.)

The source of your affiant's information and the grounds for his belief are as follows:

1. I have been a Special Agent with DSS for over a year. During that time, I have participated in over twenty investigations, whereby I have conducted physical surveillance, interviewed witnesses, reviewed extensive documents, and used other investigative techniques to secure relevant information for use in criminal prosecutions. I am familiar with the facts and circumstances set forth below based on my own involvement in the investigation of the defendants SEMYON VAYNER and ALIAKSANDR ZHYLTSOU, as well as reports of other law enforcement officers involved in the investigation, interviews of witnesses, and documents. Because the purpose of this Affidavit is to set forth only those facts necessary to establish probable cause, I have not described all of the relevant facts and circumstances of which I am aware.

## Background

2. Certain foreign diplomats and other foreign officials may make tax exempt purchases, including of luxury vehicles, in the United States, and often also enjoy other discounts on such purchases. This Affidavit concerns an investigation in to a fraud ring with operations based in Brooklyn, New York, whereby various individuals have purchased,

3

attempted to purchase, or are currently in the process of purchasing, by telephone and email, luxury vehicles from dealerships around the country while posing as diplomats, in violation of Title 18, United States Code, Sections 2 and 915. The practice of the fraud ring is to provide scanned identification and other documents of diplomats and other foreign officials to various dealerships. The documents are often fraudulent; some entirely fabricate diplomats and other foreign officials, while others concern actual diplomats and other foreign officials, most of whom have often already left their posts here. Vehicles purchased at a discount can be resold in the United States or abroad at a profit. DSS is now investigating the purchase or attempted purchase of over thirty luxury vehicles from over twenty dealerships around the country by individuals participating in this fraud ring, along with the sale of such vehicles in Ukraine and elsewhere.

    3.  On or about February 11, 2011, DOS learned from representatives of a luxury vehicle dealership in North Carolina ("Dealership 1"), that an individual ("Co-Conspirator 1") was attempting to purchase a Porsche Cayenne with the benefit of tax exemption and other discounts by posing as a foreign diplomat ("Victim 1"). Subsequent checks revealed that identification and other documents that had been presented to the dealership through email were fraudulent and that, in any case, the real Victim 1, a

foreign national who worked at an embassy in Washington, D.C., did not have the requisite status to make tax exempt purchases.

    4.    On or about February 17, 2011, Dealership 1 provided the telephone number of a DSS agent to Co-Conspirator 1 and said that the agent was the dealership's representative who would arrange delivery of the Porsche Cayenne. On February 23, 2011, the agent spoke with Co-Conspirator 1 and arranged for delivery of the Porsche Cayenne to an address in Brooklyn, New York. That afternoon, VLADYSLAV TIMKU attempted to accept delivery of the vehicle at the agreed location, and presented to the agent identification documents in the name of Victim 1. On his person, VLADYSLAV TIMKU was carrying a Bank of America credit card in both his name and the name of TST Group Corp. Dealership 1 has records showing that it received a deposit from this credit card and a wire transfer from TST Group Corp. for the balance of payment for the Porsche Cayenne.

    5.    Subsequent investigation has revealed that a person using the number of a telephone that the agents found in the defendant VLADYSLAV TIMKU's possession on or about February 23, 2011, credit cards found on in his person that day, and various email addresses belonging to VLADYLSAV TIMKU, purchased or attempted to purchase other luxury vehicles with the benefit of tax exemption and other discounts from various dealerships.

6.    VLADYSLAV TIMKU left the United States for Ukraine on March 4, 2011. He periodically calls DSS agents and says, in sum and substance, that he will not return to the United States because he knows he faces a long prison sentence if he does. A warrant for his arrest, issued on March 8, 2011, remains outstanding.

### The Defendant SEMYON VAYNER

7.    Pursuant to a search warrant obtained on March 24, 2011, DSS agents searched six email addresses belonging to or associated with VLADYSLAV TIMKU. This search revealed multiple emails between VLADYSLAV TIMKU and two email addresses believed to belong to the defendant SEMYON VAYNER. According to a commercial database check of a company called Universal International Services, the defendant SEMYON VAYNER is its registered agent and his email is tsvayner@usa.net. (According to bank records, the defendant SEMYON VAYNER and his wife, Tamara, are the sole owners of that company.) Further, in an application for a United States passport dated May 15, 2006, the defendant SEMYON VAYNER listed tsvayner@usa.net as his email address. A second email address with whom VLADYLAV TIMKU had regular correspondence, tsvayner@gmail.com, is registered to "Sam Vayner." Emails from third parties to VLADYSLAV TIMKU indicate that "Sam Vayner" is a nickname of the defendant SEMYON VAYNER.

8. On October 26, 2010, an email sent from tsvayner@gmail.com to VLADYSLAV TIMKU contained a scanned image of a DOS Tax Exemption Card belonging to a a real diplomat from a foreign country ("Victim 2"). According to DOS, the card appears to be a scanned copy of a real original, and bears the correct DOS Personal Identification Number for Victim 2. Subsequent investigation reveals that approximately four luxury vehicles have been purchased from dealerships around the country from individuals using identification documents for Victim 2.

9. On January 28, 2011, an email sent from tsvayner@usa.net to VLADYSLAV TIMKU contained the names of five real diplomats from a foreign country ("Victims 3-7") with instructions to verify that they are not on "the export list." Upon information and belief, this refers to a list maintained by manufacturers of luxury vehicles restricting persons on the list from exporting their vehicles abroad.

10. On February 26, 2011, shortly after DSS agents attempted to deliver a Porsche Cayenne from Dealership 1 to Brooklyn, New York, and VLADYSLAV TIMKU attempted to accept its delivery, an email sent from tsvayner@gmail.com to VLADYSLAV TIMKU asks, in sum and substance, where the money is from the Porsche deal. In subsequent emails to tsvayner@gmail.com, VLADYSLAV TIMKU explains that he has left the country and disconnected his telephone.

11. Subsequent investigation has revealed that the defendant SEMYON VAYNER worked at a luxury car dealership in Maryland ("Dealership 2") from approximately January 2006 to October 2007. According to Dealership 2, the defendant SEMYON VAYNER processed numerous sales of vehicles to foreign diplomats during that time. He therefore had regular access to their identity and other documents. Further, according to Dealership 2, the defendant SEMYON VAYNER continued to spend time at Dealership 2 after his employment there terminated.

12. According to a cooperating witness ("CW1"), whose information has proved reliable in the past, the defendant SEMYON VAYNER obtained identity and other documents from Dealership 2 during and after his employment there, and the fraud ring that is the subject of the instant investigation used these documents to purchase luxury vehicles, sometimes leaving the documents intact and sometimes after altering them. Further, according to CW1, VLADYSLAV TIMKU has described the defendant SEMYON VAYNER as his "document source," and would pay the defendant SEMYON VAYNER every time he successfully purchased a luxury vehicle using identification and other documents provided by him.

13. On February 23, 2011, after the attempted delivery of the Porsche Cayenne, DSS agents found on VLADYSLAV TIMKU's person a business card for Universal International Services, listing the defendant SEMYON VAYNER as the General Manager. A

commercial database check shows that the defendant is the registered agent for Universal International Services, located in Rockville, Maryland. Subsequent investigation has revealed numerous wire transfers between Universal International Services and both TST Group Corp., from which Dealership 1 received payment for the Porsche Cayenne purchased in the name of Victim 1, as well as Platinum Car Rental, a company registered to VLADYSLAV TIMKU. From May 26, 2009 to March 24, 2010, records show that Platinum Car Rental made payments totaling approximately $2,009,275 to Universal International Services. Then, from January 16, 2011 to January 25, 2011, records show that TST Group Corp. made three payments to Universal International Services totaling approximately $13,400. One of these payments was by check with "commission payment" noted in the memo section. The earlier, larger payments suggest that VLADYSLAV TIMKU paid the defendant SEMYON VAYNER to purchase luxury vehicles. The later, smaller payments suggest that, in corroboration of CW1's account, VLADYSLAV TIMKU paid the defendant SEMYON VAYNER as a document source but purchased the vehicles himself.

14. Finally, on July 7, 2008, a dealership in Connecticut ("Dealership 3") sold a luxury vehicle to an individual ("Co-Conspirator 2") who presented identification documents in the name of a foreign diplomat whose identity,

according to DOS databases, is fabricated. Dealership 3's records show that Co-Conspirator 2 listed his home address as 11100 Welland Street, North Potomac, Maryland. According to a law enforcement database, that address belonged to the defendant SEMYON VAYNER in July 2008. And on April 14, 2010, Dealership 2 sold a luxury vehicle to an individual ("Co-Conspirator 3") who presented identification documents in the name of a foreign diplomat whose identity, according to DOS, is fabricated. The purchase was paid in full by Universal International Services, the company registered to the defendant SEMYON VAYNER.

### The defendant ALIAKSANDR ZHYLTSOU

15. According to CW1, the defendant ALIAKSANDR ZHYLTSOU has multiple roles in the fraud ring subject to the instant investigation: he represents himself by telephone and email to luxury vehicle dealerships as a foreign diplomat, he alters identification and other documents of foreign diplomats provided to him by the defendant SEMYON VAYNER, and he performs odd jobs for other members of the ring.

16. According to CW1, the defendant ALIAKSANDR ZHYLTSOU uses the email address cosmos422@gmail.com to correspond with luxury vehicle dealerships while posing as a foreign diplomat. Before receiving this information from CW1, independent investigation had revealed that a luxury vehicle dealership in Washington ("Dealership 4") has been in contact

with an individual who represents himself as a foreign diplomat and inquires about prices for various luxury vehicles. DOS review confirms that there is no diplomat or other foreign official bearing the name supplied. Records from Dealership 4 show that these inquiries have been made using the email address cosmos422@gmail.com.

17. Subsequent investigation suggests the defendant ALIAKSANDR ZHYLTSOU is skilled in altering identification and other documents for use in the fraud ring subject to this investigation. From an analysis of correspondence between VLADYSLAV TIMKU's email accounts and azdmadeuz@gmail.com, the email address azdmadeuz@gmail.com appears to belong to the defendant ALIAKSANDR ZHYLTSOU. On February 14, 2008, an email was sent from azdmadeuz@gmail.com to an email address belonging to VLADYSLAV TIMKU with a digital photograph of a diplomatic license plate. DOS review shows the number on the license plate is fraudulent. Likewise, on October 13, 2010, an email was sent from azdmadeuz@gmail.com to an email address belonging to VLADYSLAV TIMKU with digital photographs of a diplomatic passport belonging to a foreign diplomat, a visa, a driver's license issued by DOS, a diplomatic identification card, and a DOS Tax Exemption Card. DOS review shows all of the documents are fraudulent.

18. After VLADYSLAV TIMKU left for the Ukraine on March 4, 2011, he continued to negotiate the purchase of a luxury vehicle from a dealership in Colorado ("Dealership 5"). Dealership 5's records show that on March 16, 2011, it received an email from an address belonging to VLADYSLAV TIMKU asking that all documents relating to the purchase be sent to what he described as his home address at 1925 Quentin Road, Apartment 6M, Brooklyn, New York. According to a law enforcement database, this address does not belong to VLADYSLAV TIMKU and is instead the home address of the defendant ALIAKSANDR ZHYLTSOU and his mother.

### Conclusion and Request for Sealing

19. WHEREFORE, your affiant requests that an arrest warrant be issued for the defendants SEMYON VAYNER, otherwise known as "Sam Vayner" and "Semen," and ALIAKSANDR ZHYLTSOU, so that they may be dealt with according to law.

20. It is further requested that this Court issue an Order sealing, until further order of this Court, all papers submitted in support of this Application. Sealing is necessary

12

because the items and information to be seized are relevant to an ongoing investigation, and premature disclosure of the contents of this Affidavit and related documents.

KOMAAL C. COLLIE
Special Agent
Diplomatic Security Service

Sworn to before me this
27th day of March, 2011

UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF NEW YORK